IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| LINDA TRIGO, *as mother and next friend of* TOMAS TRIGO, *a minor*, | CASE NO. 3:10-cv-00028 |
| *Plaintiff,* | |
| v. | MEMORANDUM OPINION |
| TRAVELERS COMMERCIAL INS. CO., and JOSHUA ROBERT WEASENFORTH, | JUDGE NORMAN K. MOON |
| *Defendants.* | |

This matter is before the Court upon Plaintiff's Motion for Remand, filed June 22, 2010 (docket no. 8), and Defendant's opposition thereto, styled as a Motion to Realign, filed July 6, 2010 (docket no. 13), and all accompanying briefs and attachments submitted in connection therewith. After full consideration of the arguments presented in the submissions, as well as those presented at the hearing on August 23, 2010, the Court will deny Plaintiff's Motion for Remand, and will deny as moot Defendant's Motion to Realign, in an accompanying Order, to follow.

I. BACKGROUND[1]

Plaintiff Linda Trigo, as mother and next friend of Tomas Trigo, a minor (hereinafter "Plaintiff") brought suit in the Circuit Court of Greene County against Defendant Travelers Commercial Insurance Co. (hereinafter "Travelers") and Defendant Joshua Robert Weasenforth

---

[1] The background is drawn from the Complaint and does not appear to be in dispute by the parties. However, because the burden to prove jurisdiction rests upon the party opposing remand, the facts are stated in the light most favorable to the Plaintiff, *i.e.*, the party seeking remand. *See Venezuela v. Massimo Zanetti Beverage USA, Inc.*, 525 F.Supp.2d 781, 783 n.1 (E.D. Va. 2007) (citing *Booth v. Furlough, Inc.*, 995 F.Supp. 629, 630 (E.D. Va. 1998)).

(hereinafter "Weasenforth") (collectively "Defendants"). Plaintiff is a resident and citizen of Virginia and Travelers is an insurance company organized under the laws of Connecticut with its principal place of business in Connecticut. However, Weasenforth is also a resident and citizen of Virginia, and if properly considered a defendant with a real and substantial interest in this controversy, there would not be complete diversity between the parties.

This suit arises out of an automobile accident that occurred on December 21, 2008. On this date, Tomas Trigo was a passenger in a vehicle driven by Weasenforth, traveling southbound on Route 240 (Crozet Avenue) in Albemarle County, Virginia. Weasenforth lost control of the vehicle, causing it to roll over twice. Tomas Trigo was thrown from the vehicle during the accident, and suffered a skull fracture and permanent loss of hearing in one ear.

At the time of the accident, the vehicle driven by Weasenforth was insured by an Allstate Insurance policy, which had a $50,000.00 liability limit. This amount of liability coverage is insufficient to compensate Plaintiff for his injuries. Travelers provided uninsured and underinsured motorist (hereinafter "UM/UIM") coverage to the Trigo family through a policy insuring two automobiles for a policy period between December 12, 2008 and June 12, 2009 (hereinafter "the Policy"). *See* Complaint, Ex. A. Travelers charged separate premiums for the UM/UIM coverage for each of the two cars it insured, which were a 1995 Mercedes-Benz E320 and a 1997 Plymouth Breeze. The Policy provided $100,000.00 in liability coverage per person, per car.[2]

The Policy provides, in pertinent part, as follows:

> We will pay, in accordance with Va. Code Ann. Section 38.2-2206, damages which an "insured" or an "insured's" legal representative is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" or an "underinsured motor vehicle"

---

[2] However, note that for a policy issued pursuant to the uninsured motorist statute, a named insured is covered irrespective of whether he was occupying an insured vehicle at the time of the accident. *See Lipscombe v. Sec. Ins. Co. of Hartford*, 213 Va. 81, 189 S.E.2d 320, 323 (1972).

because of:

1. "Bodily injury" sustained by an "insured" and caused by an accident; and
2. "Property damage" caused by an accident.

*See* Part 3(a) of the Policy.

As Tomas Trigo is a family member of Linda and Tom Trigo, he falls under the definition of "insured" in Part 3(c)(1) of the Policy. *See also* Complaint, at ¶ 14.

Plaintiff filed the Complaint in the Circuit Court of Greene County on June 4, 2010, entitled "Complaint for Declaratory Judgment" against both Travelers and Weasenforth. Plaintiff includes three counts in the Complaint. Count One is entitled "UIM Coverage May Be Stacked Based Upon The Payment Of Multiple Premiums For UIM Coverage." *See id.* at ¶¶ 16-22. Count Two is entitled "UIM Coverage May Be Stacked Since The UIM Endorsement Itself Does Not Contain The *Borror* Anti-Stacking Language For Bodily Injury Claims." *See id.* at ¶¶ 23-28. Count Three is entitled "The Declarations Page Affirmatively Authorizes Stacking." *See id.* at ¶¶ 29-33. At the conclusion of each count, Plaintiff states that she "demands judgment against the defendants declaring that, under the Travelers policy issued to Linda and Tom Trigo, Travelers provides Tomas Trigo . . . with underinsured motorist coverage of $200,000.00 for his claims against Weasenforth." *Id.* at 5, 7, 8.

Thereafter, on June 8, 2010, Travelers filed a Notice of Removal, and a memorandum in support thereof (docket nos. 1, 2). On June 22, 2010, Plaintiff filed a Motion to Remand (docket no. 8). On July 6, 2010, Travelers filed its opposition to the Motion to Remand, which was also entitled Motion to Realign (docket no. 13). On July 12, 2010, Plaintiff filed her reply to Travelers' opposition (docket no. 18). The Court heard argument on the Motion to Remand and the Motion to Realign on August 23, 2010.

## II. JURISDICTION

The procedure for removing cases from state to federal court provides, in pertinent part, that "[a] defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal." 28 U.S.C. § 1446(a). It is well established that the removal statutes are to be strictly construed because removal constitutes an infringement of state sovereignty. *See Lontz v. Tharp*, 413 F.3d 435, 440 (4th Cir. 2005); *Creed v. Virginia*, 596 F.Supp.2d 930, 933-34 (E.D. Va. 2009). As a result, "doubts regarding compliance with removal provisions must be resolved in favor of remanding the case to state court." *Bellone v. Roxbury Homes, Inc.*, 748 F.Supp. 434, 436 (W.D. Va. 1990). *See also Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004) (en banc); *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 425 (4th Cir. 1999). It is also well established that "[t]he party seeking removal bears the burden of demonstrating that removal jurisdiction is proper." *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 200 (4th Cir. 2008); *see also Galen-Med, Inc. v. Owens*, 41 F.Supp.2d 611, 612-13 (W.D. Va. 1999). The statutes only permit removal where "the district courts of the United States have original jurisdiction" over the claim, 28 U.S.C. § 1441(a), meaning the Court must determine "whether [this] claim could have been brought originally in federal district court." *King v. Marriott Int'l, Inc.*, 337 F.3d 421, 424 (4th Cir. 2003). A claim generally must arise under federal law, invoke diversity jurisdiction, or fall under the "rare" set of claims that are completely preempted by federal law, in order for removal to be appropriate. *Lontz*, 413 F.3d at 439-40. Neither party argues that there is a federal question or complete preemption issue. Instead, Travelers alleges that the claim could have been filed originally in this Court on the basis of diversity jurisdiction, and on that ground, removal was proper. Notice of Removal, at ¶ 8.

Diversity jurisdiction in civil actions requires there to be more than $75,000 in controversy and complete diversity between the parties, *i.e.*, the state of citizenship of each plaintiff must be different from that of each defendant. 28 U.S.C. § 1332(a); *Athena Automotive, Inc. v. DiGregorio*, 166 F.3d 288, 290 (4th Cir. 1999). In particular, "[t]his 'complete diversity' rule, when coupled with other rules, makes it difficult for a defendant to remove a case if a nondiverse defendant has been party to the suit prior to removal." *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999). However, where the requirements for diversity jurisdiction are met and no defendant is a citizen of the state in which the suit was brought, the case properly removable to federal court. *See* 28 U.S.C. § 1441(b); *see also Lontz*, 413 F.3d at 439; *Peterson v. Cooley*, 142 F.3d 181, 184 (4th Cir. 1998).

In the Court's inquiry into diversity jurisdiction, parties that are "fraudulently joined" are to be disregarded, and only "real parties to the controversy" are relevant. *See Mayes*, 198 F.3d at 461; *Boss v. Nissan N. Am., Inc.*, 228 F. App'x 331, 334-35 (4th Cir. 2007); *see also* 77 C.J.S. *Removal of Cases* § 86. The term "fraudulent joinder" is, in many ways, a misnomer, as it requires neither fraud nor joinder. *See Mayes*, 198 F.3d at 461 n.8. It is more accurately characterized as "a term of art [which] does not reflect on the integrity of plaintiff or counsel, but is merely the rubric applied when a court finds either that no cause of action is stated against [a] nondiverse defendant, or in fact no cause of action exists." *AIDS Counseling & Testing Ctrs. v. Group W Television, Inc.*, 903 F.2d 1000, 1003 (4th Cir. 1990). To establish that a nondiverse defendant has been fraudulently joined, the removing party must establish either:

> [t]hat there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or [t]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts.

*Baltimore County v. Cigna Healthcare*, 238 F. App'x 914, 920 (4th Cir. 2007) (citing *Mayes*, 198 F.3d at 464). The burden on Travelers in claiming fraudulent joinder is heavy. *See Mayes*, 198 F.3d

at 464 (citing *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232-33 (4th Cir. 1993)).

Travelers does not allege that Plaintiff engaged in "outright fraud." Instead, it contends that Plaintiff "states no count, claim or cause of action against Mr. Weasenforth," he "seeks no relief from Mr. Weasenforth," and as a result, Mr. Weasenforth "has been fraudulently joined in this action, his citizenship is disregarded for purposes of determining diversity of citizenship, and complete diversity exists between the remaining defendant – Travelers – and [Plaintiff]." Travelers Memorandum in Opposition, at 11-12. The Court must resolve all issues of fact and law in Plaintiffs' favor when determining whether there is no possibility that Plaintiff would be able to establish a cause of action against Mr. Weasenforth. *Mayes*, 198 F.3d at 464. Finally, in the Court's inquiry into fraudulent joinder, it "is not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available." *Mayes*, 198 F.3d at 464 (citing *AIDS Counseling and Testing Centers*, 903 F.2d at 1004).

In a related but not identical doctrine, in the Court's inquiry into diversity jurisdiction, "nominal" or "formal" parties that have been joined are to be disregarded and only "real parties to the controversy" are considered relevant. *See Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460-61, 100 S.Ct. 1779 (1980); *see also* 77 C.J.S. *Removal of Cases* § 89. The Fourth Circuit has not provided a standard against which courts can determine what constitutes a "nominal party" for removal purposes. *See Creed*, 596 F.Supp.2d at 934 (citing *Allen v. Monsanto Co.*, 396 F.Supp.2d 728, 732 (S.D.W.Va. 2005)). For example, in determining whether a party is "nominal," the Fifth Circuit standard mirrors the fraudulent joinder standard above: namely, whether there is "no possibility" that the plaintiff could establish a cause of action against it in state court. *See Farias v. Bexar City Bd. of Trustees for Mental Health Mental Retardation Servs.*, 925 F.2d 866, 871 (5th Cir. 1991). Courts within this Circuit have asked whether there is any "legal possibility for predicting" that the party

could be found liable. *See Creed*, 596 F.Supp.2d at 935 (citing *Allen*, 396 F.Supp.2d at 733). Courts within this Circuit have also asked "whether a court would be able to enter a final judgment favoring the plaintiff in the absence of the purportedly nominal defendant without materially affecting the relief due to the plaintiff." *Creed*, 596 F.Supp.2d at 935; *see also Blue Mako, Inc. v. Minidis*, 472 F.Supp.2d 690, 696 (M.D.N.C. 2007). Travelers, as the removing party, bears the burden of establishing that Weasenforth is a "formal" or "nominal" party whose citizenship can be ignored for diversity purposes. *See Creed*, 596 F.Supp.2d at 934; *see also Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F.Supp.2d 357, 389 (S.D.N.Y. 2006) (same).

Travelers contends that the citizenship of Weasenforth should not be considered for purposes of the Court's diversity of citizenship inquiry on the grounds that, *inter alia*, he is a nominal party. As such, Travelers argues that there is complete diversity between the parties with a real and substantial interest in this case, and removal to federal court was proper. The Court agrees. In a declaratory judgment suit brought in Virginia only against one's insurer and solely to establish policy limits for UM/UIM coverage, the party whose allegedly tortious conduct caused the underlying injury will rarely, if ever, possess a real and substantial interest in the outcome of the case. Under the facts of this case, Weasenforth is undeniably a nominal party, and therefore there is complete diversity between the parties.

At the outset, Weasenforth appears to be a nominal defendant because no cause has been asserted against, and no relief sought from, Weasenforth. *See e.g.*, *Kaur v. Makhan Shan Lubana Trust*, No. 4:08-cv-3216, 2009 WL 1288961, at * 2 (D. Neb. May 5, 2009) ("Since the plaintiffs' complaint mentions the Makhan Shan Lubana Trust, but fails to allege any factual allegations, legal theories, or claims for recovery against the trust, the court has a significant basis for concluding that the trust was improperly named as a defendant, with one potential reason being an attempt to avoid

federal jurisdiction."); *Alberto-Culver Co. v. Sunstar, Inc.*, No. 01 C 5825, 2001 WL 1249055, at *4 (N.D. Ill. Oct. 17, 2001) (recognizing that "a defendant is nominal if there is no reasonable basis for predicting that it will be held liable," and concluding that Bank One was a nominal defendant because it "simply cannot incur liability when there is no cause of action against it"). Even though the Complaint nominally seeks relief in each cause of action "against the defendants," *i.e.*, from Travelers and Weasenforth, it is clear that relief is sought only from Travelers. The substance of the dispute, and of each cause of action asserted by Plaintiff, concerns whether the language in the Travelers policy is sufficiently clear to prevent stacking of UM/UIM coverage, or whether conversely, it affirmatively authorized such stacking. Indeed, Plaintiff admits that "no relief is claimed against Weasenforth in this action," but instead argues that "his ability to protect his interests requires that he be a party to this action." Plaintiff's Reply, at 3 (docket no. 18).

Of course, Weasenforth is not a party to the Policy or in privity with any party to the Policy. Therefore, unless the Court finds that an exception to this common-law rule applies, Weasenforth would not even have standing to sue under the instrument that is the subject of the instant suit. *See e.g.*, *Old Dominion Freight Line, Inc. v. Standard Sec. Life Ins. Co. of N.Y.*, No. CH05-1870, 2007 WL 6013705, at *5 (Va. Cir. Ct. July 18, 2007) ("At common law, one not a party to a contract did not have standing to sue for breach of contract."); *Radosevic v. Virginia Intermont College*, 651 F.Supp. 1037, 1038 (W.D. Va. 1987) ("Generally one not a party to a contract does not have standing to sue for breach of that contract.").

The only rationale raised by Plaintiff as to how Weasenforth has an interest in the outcome of this litigation (even if he is not a party to the contract) allegedly stems from the fact that "Travelers' UIM coverage will have to pay out in any underlying case against Weasenforth," and that "[u]nder Virginia law, Travelers may demand repayment from Weasenforth for any amounts it

pays out." Plaintiff's Reply, at 3. Plaintiff argues that "Weasenforth's exposure for repayment to Travelers will be up to $50,000.00 if Travelers prevails," but "will be up to $150,000.00 if Trigo prevails." *Id.* Accordingly, Plaintiff concludes that "Weasenforth does have interests with respect to the Travelers policy" and "is not a complete stranger to the policy's UIM coverage and 'the issues raised in this lawsuit.'" *Id.*

This precise argument was recently raised, and rejected, in *Lloyd v. Travelers Prop. Cas. Ins. Co.*, 699 F.Supp.2d 812 (E.D. Va. 2010) (Ellis, J.). Therein, the plaintiff (citizen of Virginia) brought a declaratory judgment action in Virginia state court against his insurer, Travelers (citizen of Connecticut), and the six defendants (citizens of Virginia) whose allegedly tortious conduct caused plaintiff's injuries stemming from an automobile accident. *See Lloyd*, 699 F.Supp.2d at 814. Similarly, that suit was also brought to determine "whether the coverage limits on the underinsured motorist provisions of [Plaintiff's] Travelers insurance policy are 'stackable.'" *Id.* at 814. Travelers subsequently removed the suit to federal court, contending that "the tortfeasor defendants are merely nominal parties" that were not "real and substantial parties in interest in this action," and thus their citizenship should be disregarded for diversity purposes. *Id.* at 814 – 15.

The court in *Lloyd* dismissed arguments that the tortfeasor defendants had a real interest in the outcome of the declaratory judgment suit because the tortfeasor defendants' liability does not depend upon the scope of the insurance policy coverage. *Id.* at 816. By statute, providers of UM/UIM coverage "shall be subrogated to the rights of the insured . . . against the person causing the injury, death, or damage . . . *to the extent that payment was made*." *Id.* (quoting Va. Code § 38.2-2206(G)) (emphasis added). The adjudication of UM/UIM policy limits in this suit is independent of, and has no impact upon, any potential liability that may be fixed upon alleged-tortfeasor Weasenforth in a subsequent personal-injury suit.

Finally, Plaintiff argues that Weasenforth's interest in this action makes him a "necessary party" under Rule 19 of the Federal Rules of Civil Procedure. Weasenforth's absence from this action "would impede his ability to protect his interest," and if "this case had been brought without Weasenforth as a defendant," Plaintiff argues that "the Court should add him." *See* Plaintiff's Reply, at 3–4. The Court is not persuaded that Weasenforth is a "necessary party" for the reasons set forth above. Furthermore, the Virginia courts appear to have similarly rejected the contention that the alleged tortfeasor would be a necessary party to this suit, although they have not so ruled in the context of the Federal Rules of Civil Procedure.

The definitive case in Virginia addressing "necessary parties" in a declaratory judgment suit brought to establish UM/UIM coverage limits is *Erie Ins. Group v. Hughes*, 240 Va. 165, 393 S.E.2d 210 (1990). In fact, Plaintiff cites *Erie Insurance Group* as presenting an "analogous" situation, which should caution the Court against proceeding "without Weasenforth's involvement, [because] he will not be bound by any decision of this Court." Plaintiff's Memorandum in Support of Motion to Remand, at 7. A careful reading of *Erie Insurance Group*, and subsequent authorities in Virginia, support the contrary position, *i.e.*, that the alleged tortfeasor is not a necessary party to any suit brought against one's insurer to establish limits for UM/UIM coverage.

The facts underlying that declaratory judgment suit stemmed from a two-car collision, involving one vehicle registered to Nettie Hughes and operated by John Critzer, and another registered to Ruby Viar and operated by Robert Kendrick. *Erie Ins. Group*, 393 S.E.2d at 210. Following the accident, Hughes filed claims with his insurance company Allstate, with which he had a policy for uninsured motorist coverage, and against Erie Insurance Group, with which Viar had a liability insurance policy. *Id.* Both insurance companies denied coverage, and Hughes subsequently filed suit against Allstate and Erie to establish the rights and duties owed under each policy.

However, Hughes failed to name Viar, the owner of the other vehicle, or Kendrick, the other driver, as parties to the action. *Id.* When the trial court found that Erie, who was Viar's insurer, was required to provide coverage in this case, Erie appealed to challenge the subject matter jurisdiction of the trial court. *Id.* at 211. The Supreme Court of Virginia agreed, sustaining Erie's jurisdictional challenge and finding there was no justiciable controversy. *Id.* at 212.

However, the basis for this decision was expressly predicated upon the fact that Hughes had sued not only his own insurer to establish coverage limits, but had also sued the other driver's insurer, without naming the other driver. The court framed the issue stemming from Hughes' failure to name the other driver as a defendant as follows:

> If we were to uphold the trial court's judgment on the jurisdictional question but should reverse its declaration on the question of coverage, neither Viar nor Kendrick would be bound, either by the judgment below or by our decision. Hence, as a defendant in the several tort actions, each would have standing to file a declaratory judgment suit or an action *ex contractu* against Erie claiming coverage.
>
> . . .
>
> Court cannot afford such "relief" when they lack the power to bind all parties to the controversy . . . Without Kendrick and Viar as parties defendant, this action cannot be sufficiently conclusive.

*Erie Ins. Group*, 393 S.E.2d at 212. In other words, the Court's adjudication of the coverage owed under Erie's policy was "'clear and binding' only on Erie and Allstate," but not upon Viar and Kendrick, who were covered under the policy and would have standing to sue under that policy. *Id.* This concern about binding all parties to a particular controversy is not similarly implicated in the present case. Plaintiff does not seek an adjudication of the prospective rights and duties of the coverage afforded Weasenforth by his own insurer as a result of the accident. Instead, she only seeks an adjudication of UM/UIM coverage afforded under Plaintiff's own policy with Travelers, and of

– 11 –

which Weasenforth is not a party. Plaintiff's argument that Weasenforth is a "necessary party" is further undermined by *Stroupe v. Gov't Emp. Ins. Co.*, No. 06-486, 2007 WL 6013603 (Va. Cir. Ct. July 12, 2007), wherein the court addressed a suit by the named insured and other named "operators" of an automobile insurance policy against GEICO, their insurer, for an adjudication of UIM coverage. The court held, with only the insurer, the named insured, and several covered "operators" of the vehicle as parties, *but without the alleged tortfeasor as a named party*, that "[a]ll necessary parties to this action are present before the Court." *Stroupe*, 2007 WL 6013603, at *2 (citing *Erie Ins. Co.*, 393 S.E.2d at 212). Therefore, the *Stroupe* court is in accord with this Court's finding (as well as that in *Lloyd*) that the alleged tortfeasor in the position of Weasenforth does not possess an interest in such an action to require their participation in the injured party's declaratory judgment action against his insurer for a declaration of UM/UIM coverage.

Generally, in a declaratory judgment suit in Virginia, brought only against one's insurer and solely to establish policy limits for UM/UIM coverage, the party whose allegedly tortious conduct caused the underlying injury will rarely, if ever, possess a real and substantial interest in the outcome of the case. Furthermore, under the facts of this case, Travelers has undeniably met its burden of establishing that Weasenforth is a nominal party. Therefore, because his citizenship is not to be considered in the Court's diversity analysis, *see Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460-61, 100 S.Ct. 1779 (1980), there is complete diversity between the parties and this Court possesses subject matter jurisdiction.

### III. ABSTENTION

Plaintiff also advances several arguments as to why this Court should decline to exercise its jurisdiction, in the event that Weasenforth is found to be a nominal or fraudulently joined party.

First, Plaintiff argues that, under *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098 (1943), courts have frequently considered abstention in the context of insurance regulation. *See* Plaintiff's Memorandum in Support of Motion to Remand, at 8–9. She argues that federal courts must "exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy," and that "courts should abstain from deciding cases presenting difficult questions of state law bearing on policy problems of substantial public importance whose importance transcends the result in the case at bar." Plaintiff's Memorandum in Support of Motion to Remand, at 9 (citing authorities).

The Fourth Circuit has recently restated the standard for district courts to follow in determining whether a *Burford* abstention is appropriate. "*Burford* permits abstention when federal adjudication would 'unduly intrude' upon 'complex state administrative processes' because either: (1) 'there are difficult questions of state law . . . whose importance transcends the result in the case then at bar'; or (2) federal review would disrupt 'state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *Martin v. Stewart*, 499 F.3d 360, 364 (4th Cir. 2007) (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans ("NOPSI")*, 491 U.S. 350, 109 S.Ct. 2506 (1989)). However, *Burford* abstentions are permitted only when the Court is presented with these "extraordinary circumstances," and its balancing of state and federal interests "only rarely favors abstention." *Martin*, 499 F.3d at 364 (citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728, 116 S.Ct. 1712 (1996)).

In the case at bar, the Court is not presented with such "extraordinary circumstances" warranting a *Burford* abstention. First, this case does not present a particularly difficult or novel question of state law sufficient to warrant an abstention. The Court will be guided in its interpretation of the terms of this insurance policy by recent, clear and controlling authority of the

Supreme Court of Virginia set forth in *Virginia Farm Bureau Mut. Ins. Co. v. Williams*, 278 Va. 75, 677 S.E.2d 299 (2009). In *Williams*, the court (1) summarized its previous holdings with respect to "intrapolicy stacking" of UM/UIM coverage; (2) discussed and distinguished *Goodville Mut. Cas. Co. v. Borror*, 221 Va. 967, 275 S.E.2d 625 (1981), a prior decision in which policy language was found to prohibit stacking; and (3) held that the specific policy language at issue in *Williams* was insufficiently clear and unambiguous to prohibit stacking. 677 S.E.2d at 303-04. While the *Williams* decision is recent, it has already been substantively discussed and interpreted by several federal and state courts. *See e.g.*, *Lloyd v. Travelers Prop. Cas. Ins. Co.*, --- F.Supp.2d ----, 2010 WL 2928806 (E.D. Va. July 22, 2010); *O'Brien v. Oatman*, CL09-5381, slip op. at 4–5, (Va. Cir. Ct. June 23, 2010); *Salzman v. Kanchev*, *et al.*, CL 09-1566, slip op. at 5–8 (Va. Cir. Ct. February 4, 2010). In other words, the Court will not be entering uncharted waters when called upon to interpret the Travelers policy language, but instead will be guided by well-settled principles of Virginia contract law. Second, allowing this case to proceed in federal court will not result in the disruption of any complex state administrative scheme, which are circumstances that have been held to warrant a *Burford* abstention. *See e.g.*, *First Penn-Pacific Life Ins. Co. v. Evans*, 304 F.3d 345, 348-51 (4th Cir. 2002) (upholding *Burford* abstention where dispute "implicate[d] an entity placed into receivership by order of a state court," where state receivership proceedings were held to be a "highly regulated state process" and "a matter of substantial public concern"); *Charleston Area Med. Ctr. v. Blue Cross & Blue Shield Mut. of Ohio*, 6 F.3d 243, 250 n.5 (4th Cir. 1993) (cautioning that courts should consider abstaining under circumstances where the integrity of an insolvency proceeding and decisions by the insurance commissioner were disputed, and where an analysis of the regulation of the insurance industry of West Virginia was necessary). In stark contrast to such cases that presented the strong possibility of interference with a complex state administrative scheme,

federal courts are routinely required to adjudicate disputes such as that presently before this Court, being the interpretation of an automobile insurance policy, as a matter of course. *See e.g.*, *Lloyd*, 699 F.Supp.2d at 817 (noting that "federal courts resolve disputes of this sort on a regular basis"); *Keene v. Travelers Indem. Co. of Illinois*, 73 F.Supp.2d 638 (W.D. Va. 1999) (holding that, under Virginia law, language of automobile insurance policy unambiguously prohibited stacking of UM coverage); *Billings v. State Farm Mut. Auto. Ins. Co.*, 680 F.Supp. 778 (E.D. Va. 1988) (same). Accordingly, the Court finds that a *Burford* abstention is not appropriate under these circumstances. *See e.g.*, *Lloyd*, 699 F.Supp.2d at 817; *Marchky v. Motorists Mut. Ins. Co.*, No. 08-cv-1058, 2008 WL 3890422, at *1 n.1 (W.D. Pa. Aug. 18, 2008); *Szabo v. CGU Int'l Ins., PLC*, 199 F.Supp.2d 715, 718 n.2 (S.D. Ohio 2002) (Rice, C.J.).

Finally, Plaintiff argues, in the alternative, that the Court should abstain from hearing this case upon consideration of the factors set forth in *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 377 (4th Cir. 1994). Under *Nautilus*, the court is to consider the following:

> (1) "the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;" (2) "whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending;" (3) whether permitting the federal action to go forward would result in unnecessary entanglement between the federal and state court systems, because of the presence of overlapping issues of fact or law;" and (4) "whether the declaratory judgment action is being used merely as a device for procedural fencing."

*Nautilus*, 15 F.3d at 377 (internal citations and quotation marks omitted).

The parties have submitted extensive briefing on the issue of whether an abstention would be appropriate under *Nautilus*. These factors are often considered in the context of whether an abstention is warranted in light of parallel state court litigation. While there is, of course, "no requirement that a parallel proceeding be pending in state court before a federal court should decline

to exercise jurisdiction over a declaratory judgment action," the absence here of parallel litigation in the Virginia courts is certainly "one consideration relevant" to this Court's decision of whether an abstention would be appropriate. *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 423 (4th Cir. 1998).

Proceeding to the first *Nautilus* factor, the Court finds that Virginia does not possess a particularly strong interest in having the Policy language interpreted in its own courts. Certainly "[t]here exists an interest in having the most authoritative voice speak on the meaning of applicable law, and that voice belongs to the state courts when state law controls the resolution of the case." *Mitcheson v. Harris*, 955 F.2d 235, 237 (4th Cir. 1992). However, the Court's discretionary power to abstain from deciding state-law questions where it otherwise has jurisdiction "may be exercised only when the questions of state law involved are difficult, complex, or unsettled." *Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 211 (4th Cir. 2006) (citing *Nautilus*, 15 F.3d at 378). As stated previously, this dispute over policy language does not fall within that set of "difficult, complex, or unsettled" cases. While Plaintiff argued at the hearing that the *Williams* case recently decided by the Supreme Court of Virginia greatly unsettled the law on "intrapolicy stacking" of UM/UIM coverage, this concern is greatly tempered by the fact that there have already been several Virginia circuit court decisions, as well as one federal district court decision, interpreting that case. Indeed, Plaintiff's statement that "the Virginia Supreme Court has decided dozens of cases interpreting [Va. Code] § 38.2-2206, and has addressed stacking issues on a variety of occasions," Plaintiff's Memorandum in Support of Motion to Remand, at 11, implicitly recognizes that there is a substantial amount of authority addressing the issue at hand, and thus, undermines her argument that Virginia has an significant interest in having its courts decide this case.

As to the second *Nautilus* factor, Plaintiff has provided the Court no reasonable basis for belief that the Virginia courts could resolve the issues here raised more efficiently. In the context of this *Nautilus* factor, the Fourth Circuit has stated that "[a]s a general rule, 'the first suit should have priority, absent the showing of balance of convenience in favor of the second action.'" *Riley v. Dozier Internet Law, PC*, 371 F. App'x 399, 403 (4th Cir. 2010) (quoting *Ellicott Mach. Corp. v. Modern Welding Co.*, 502 F.2d 178, 180 n.2 (4th Cir. 1974)). Of course, in this case there currently is no parallel state court litigation, and it is unclear on that basis how this Court could decide that state court proceedings could more efficiently handle this dispute than federal court. Even if Plaintiff did bring a personal injury suit in state court, the issues presented in that suit would be entirely different than those presented in this declaratory judgment action, and therefore neither would the third *Nautilus* factor weigh in favor of abstention. *See KBS, Inc. v. Great Am. Ins. Co. of N.Y.*, Civil Action No. 3:04-cv-730, 2006 WL 3538985, at *13 (E.D. Va. Dec. 7, 2006) (holding that there was no risk of unnecessary entanglement between federal and state court systems because "the issue to be determined here is insurance coverage, not liability, which involves distinct factual and legal issues and principles").

Finally, with respect to the fourth *Nautilus* factor, despite Plaintiff's conclusory statement to the contrary, *see* Plaintiff's Memorandum in Support of Motion to Remand, at 21, the Court cannot find that this declaratory judgment action "is being used merely as a device for procedural fencing." *Nautilus*, 15 F.3d at 377. Procedural fencing occurs when "a party has raced to federal court in an effort to get certain issues that are already pending before the state courts resolved first in a more favorable forum." *Riley*, 371 F. App'x at 403 (quoting *Gross*, 468 F.3d at 212). The Fourth Circuit has addressed whether removal constitutes "procedural fencing" for purposes of the fourth *Nautilus* factor. In *Riley*, the court recognized that "a defendant is not powerless to influence the forum that

will determine his liability," and that "removal is the appropriate avenue into federal court," but concluded "a declaratory judgment action may not be used to achieve a federal hearing in a case otherwise not removable." *Riley*, 371 F. App'x at 403-04 (internal citations omitted). Plaintiff was the proverbial master of her complaint, and she defined the scope of this action and named the other parties thereto. Having brought a declaratory judgment action in Virginia state court that was properly removable to this Court, under the reasoning set forth in *Riley*, Travelers' valid and timely removal constitutes a legitimate exercise of its right to remove a state court action to federal court, and does not constitute "procedural fencing" for purposes of the *Nautilus* factors. In the event that a party could properly remove a case from state court to federal court, yet still be found to have engaged in "procedural fencing," Plaintiff has certainly failed to advance sufficient evidence to meet that high burden. Accordingly, the fourth *Nautilus* factor does not weigh in favor of abstention.

The Fourth Circuit has "frequently approved the use of federal declaratory judgment actions to resolve disputes over liability insurance coverage, even in advance of judgment against the insured on the underlying claim for which coverage is sought." *Nautilus*, 15 F.3d at 375-76 (citing *White v. Nat'l Union Fire Ins. Co.*, 913 F.2d 165, 167-69 (4th Cir. 1990)). The Court, having jurisdiction over this dispute, concludes that it cannot abstain from adjudicating the issues herein raised, as an abstention under *Burford* is not available, and none of the factors set forth in *Nautilus* weigh in favor of abstention. *See Lloyd*, 699 F.Supp.2d at 817-18.

IV. CONCLUSION

For the reasons previously stated, and after full consideration of the arguments presented, the Court will deny Plaintiff's Motion for Remand (docket no. 8), and will deny as moot Defendant's Motion to Realign (docket no. 13), in an accompanying Order, to follow.

It is so ORDERED.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

Entered this  7th  day of September, 2010.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE