IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| LINDA TRIGO, *as mother and next friend of* TOMAS TRIGO, *a minor*, | CASE NO. 3:10-cv-00028 |
| *Plaintiff,* | |
| v. | MEMORANDUM OPINION |
| TRAVELERS COMMERCIAL INSURANCE CO., and JOSHUA ROBERT WEASENFORTH, | JUDGE NORMAN K. MOON |
| *Defendants.* | |

This matter is before the Court upon Plaintiff's Motion for Summary Judgment, filed on October 22, 2010 (docket no. 34), and Defendant Travelers' Motion for Summary Judgment, filed on the same day (docket no. 33). After full consideration of the arguments presented in the submissions, as well as those presented at the hearing on November 12, 2010, the Court will grant Travelers' Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment, in an accompanying Order, to follow.

**I. BACKGROUND**

Plaintiff Linda Trigo, as mother and next friend of Tomas Trigo, a minor (hereinafter "Plaintiff") brought suit in the Circuit Court of Greene County, Virginia against Defendant Travelers Commercial Insurance Co. (hereinafter "Travelers") and Defendant Joshua Robert Weasenforth (hereinafter "Weasenforth").

The facts are not in dispute. This suit arises out of an automobile accident that occurred on December 21, 2008. On this date, Tomas Trigo was a passenger in a vehicle driven by

Weasenforth, traveling southbound on Route 240 (Crozet Avenue) in Albemarle County, Virginia. Weasenforth lost control of the vehicle, causing it to roll over twice. Tomas Trigo was thrown from the vehicle during the accident and suffered a skull fracture and permanent loss of hearing in one ear.

At the time of the accident, the vehicle driven by Weasenforth was insured by an Allstate Insurance Company policy, which had a $50,000 liability limit. This amount of liability coverage is insufficient to compensate Tomas Trigo for his injuries. Travelers provided uninsured and underinsured motorist (hereinafter "UM/UIM") coverage to the Trigo family through a policy insuring two automobiles for a policy period between December 12, 2008 and June 12, 2009 (hereinafter "the Policy"). (*See* Compl., Ex. A.) Travelers charged separate premiums for the coverage for each of the two cars it insured, which were a 1995 Mercedes-Benz E320 and a 1997 Plymouth Breeze. In the "Automobile Policy Continuation Declarations" page, which was attached to the Policy, Travelers provided $100,000 in "Uninsured Motorists Bodily Injury" liability coverage per person, per car.

In the section of the Policy entitled "Part 3 – Uninsured Motorists Coverage," the Policy provides, in pertinent part, as follows:

> We will pay, in accordance with Va. Code Ann. Section 38.2-2206, damages which an "insured" or an "insured's" legal representative is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" or an "underinsured motor vehicle" because of:
>
> 1. "Bodily injury" sustained by an "insured" and caused by an accident; and
> 2. "Property damage" caused by an accident.

As Tomas Trigo is a family member of Linda and Tom Trigo, he falls under the definition of "insured" in Part 3 of the Policy. (*See* Compl. ¶ 14.)

Following the description of the terms of the insuring agreement in Part 3 of the Policy, the Policy provides a "Limit of Liability" section, which includes a provision purportedly preventing the intra-policy stacking of the UM/UIM coverage for the two cars covered by the Policy. It states, in pertinent part, as follows:

> B. Split Limits
>
> The limit of Bodily Injury Liability shown in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of Bodily Injury Liability shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident.
>
> The limit of Property Damage Liability shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all "property damage" resulting from any one accident.
>
> This is the most we will pay regardless of the number of:
>
> 1. "Insureds";
> 2. Claims made; or
> 3. Vehicles or premiums shown in the Declarations.

The complaint filed by Plaintiff includes three counts. Count One is entitled "UIM Coverage May Be Stacked Based Upon The Payment Of Multiple Premiums For UIM Coverage." (*See id.* ¶¶ 16-22.) Count Two is entitled "UIM Coverage May Be Stacked Since The UIM Endorsement Itself Does Not Contain The *Borror* Anti-Stacking Language For Bodily Injury Claims." (*See id.* ¶¶ 23-28.) Count Three is entitled "The Declarations Page Affirmatively Authorizes Stacking." (*See id.* ¶¶ 29-33.) At the conclusion of each count, Plaintiff "demands judgment against the defendants declaring that, under the Travelers policy issued to Linda and Tom Trigo, Travelers provides Tomas Trigo . . . with underinsured motorist

coverage of $200,000.00 for his claims against Weasenforth." (*Id*. 5, 7, 8.)

Thereafter, Plaintiff and Travelers filed cross-motions for summary judgment. (*See* docket nos. 33 and 34).

## II. APPLICABLE LAW

### A. Federal Rule of Civil Procedure 56

The court should grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250.

When faced with cross-motions for summary judgment, the standard is the same. The court must consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quotations omitted). If the court finds that there is a genuine issue of material fact, both motions must be denied. 10A THE LATE CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2720 (3d ed. 2010). "But if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will

render judgment." *Id.*

### B. Principles of Insurance Policy Construction

Virginia law provides the applicable principles of insurance law. The interpretation of an insurance policy presents a question of law. *Va. Farm Bureau Mut. Ins. Co. v. Williams*, 278 Va. 75, 80, 677 S.E.2d 299, 302 (2009). "Courts interpret insurance policies, like other contracts, by determining the parties' intent from the words they have used in the document. Provisions of an insurance policy must be considered and construed together, and any internal conflicts between provisions must be harmonized, if reasonably possible, to effectuate the parties' intent." *Id.* (citations omitted). Where the parties dispute an unambiguous policy term, the term is construed according to its plain meaning, but where the parties dispute a term that can be understood to have more than one meaning, the term is construed in favor of coverage and against the insurer. *Id.* at 81, 677 S.E.2d at 302; *Va. Farm Bureau Mut. Ins. Co. v. Gile*, 259 Va. 164, 169-70, 524 S.E.2d 642, 645 (2000); *Seals v. Erie Ins. Exch.*, 277 Va. 558, 562, 674 S.E.2d 860, 862 (2009). "[W]hen an insurer seeks to limit coverage under a policy, the insurer must use language that is reasonable, clear, and unambiguous." *Williams*, 278 Va. at 81, 677 S.E.2d at 302; *accord Lower Chesapeake Assocs. v. Valley Forge Ins. Co.*, 260 Va. 77, 88, 532 S.E.2d 325, 331 (2000). Accordingly, the intra-policy stacking of UM/UIM coverage is permitted "unless clear and unambiguous language exists on the face of the policy to prevent such multiple coverage." *Williams*, 278 Va. at 81, 677 S.E.2d at 302; *Goodville Mut. Cas. Co. v. Borror*, 221 Va. 967, 970, 275 S.E.2d 625, 627 (1981).

### III. Discussion

The parties to this action agree that there are no facts in dispute and each claims entitlement to judgment as a matter of law. Two prominent Supreme Court of Virginia opinions

on the intra-policy stacking of UM/UIM coverage are relevant to this dispute. In *Borror*, the court reviewed a policy offering UM/UIM coverage in the amount of "Bodily injury $25,000 each person; $50,000 each accident Property Damage $5,000 each accident." *Williams*, 278 Va. at 82, 677 S.E.2d at 303. Several paragraphs later, in the same UM/UIM section, the policy in *Borror* provided the following limits of liability:

> Regardless of the number of . . . motor vehicles to which this insurance applies, (a) the limit of liability for bodily injury stated in the schedule as applicable to "each person" is the limit of the company's liability for all damages because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting "each person", the limit of liability stated in the schedule as applicable to "each accident" is the total limit of the company's liability for all damages because of bodily injury sustained by two or more persons as the result of any one accident.

*Borror*, 221 Va. at 970, 275 S.E.2d at 627 (emphasis deleted). Although the policy in *Borror* contained separate premiums for the two vehicles listed in the policy, the court concluded that the policy language, particularly the phrase "[r]egardless of the number of . . . motor vehicles to which this insurance applies," clearly and unambiguously prohibited intra-policy stacking. *Id.* at 970-71, 275 S.E.2d at 628.

Recently, in *Williams*, the Supreme Court of Virginia allowed intra-policy stacking of a policy that contained the same limiting language as that found in *Borror*. The policy at issue in *Williams* did not state the policy limits within the UM/UIM section, but rather referenced an attached declarations page, which listed one premium paid for a vehicle of $250,000 each person and two additional premiums paid on two other listed vehicles of $300,000 each person. *Williams*, 278 Va. at 78-79, 677 S.E.2d at 301. The court, when reading the anti-stacking provision in the context of the entire policy, found that the anti-stacking clause could not be applied clearly and unambiguously because the declarations page contained two different

underinsured motorist coverage amounts, rendering unclear the extent of total coverage for "each person" under the policy. *Id.* at 83, 677 S.E.2d at 303.

*Williams* established that the mere presence of an anti-stacking provision in a policy limiting liability does not per se forbid stacking. The anti-stacking provision must be read in the context of the entire policy to determine whether stacking is clearly and unambiguously disallowed. In *Williams*, it was the existence of two different "each person" premiums listed in the declarations page that created the ambiguity in the policy upon which the Supreme Court of Virginia based its decision to allow stacking. *Id.* Courts interpreting *Williams* are in agreement that the different "each person" premiums was the source of the ambiguity. *See Lloyd v. Travelers Prop. Cas. Ins. Co.*, No. 1:10-cv-47, 2010 U.S. Dist. LEXIS 73940, at *4, 2010 WL 2928806 (E.D. Va. July 22, 2010) ("[T]he Supreme Court of Virginia identified 'the different sets of coverage' as the only ambiguity in the policy."); *Hostettler v. Auto-Owners Ins. Co.*, No. 3:10-cv-279, 2010 U.S. Dist. LEXIS 107989, at *9, 2010 WL 3984395 (E.D. Va. Oct. 8, 2010); *Collier v. Erie Ins. Exch.*, No. CL10-86 (Va. Cir. Ct. Sept. 27, 2010); *Davis v. Nationwide Mut. Ins. Co.*, No. CL10-555, 2010 Va. Cir. LEXIS 105, at *6-7 (Va. Cir. Ct. Aug. 31, 2010); *Joyce v. Nationwide Mut. Ins. Co.*, No. CL09-833 (Va. Cir. Ct. June 25, 2010); *Patterson v. Nationwide Gen. Ins. Co.*, No. CL09-2805 (Va. Cir. Ct. Apr. 26, 2010); *Salzman v. Kanchev*, No. CL09-1566 (Va. Cir. Ct. Feb. 4, 2010).

The Policy at issue in the instant action contains anti-stacking language that is materially identical to the language employed in the policy in *Borror*. Despite this language, Plaintiff argues that there are three grounds for finding that the Policy does not clearly and unambiguously prevent stacking. First, Plaintiff asserts that the anti-stacking provision in the limits of liability section of the Policy only prevents stacking of uninsured motorist coverage, not

underinsured motorist coverage, because it expressly only refers to "Uninsured Motorists Coverage." For example, the "Limit of Liability" section states, "[t]he limit of Bodily Injury Liability shown in the Declarations for each person for *Uninsured Motorists Coverage* is our maximum limit of liability for all damages . . . ." *See* Policy, Part 3 (emphasis added). In other sections of the Policy, points out Plaintiff, a distinction is made between an "underinsured motor vehicle" and an "uninsured motor vehicle." The Policy does not include any statement that a reference to uninsured motorist coverage is also to be treated as a reference to underinsured motorist coverage. Given the above facts, Plaintiff argues it is ambiguous whether the stacking of underinsured coverage is prohibited.[1]

Two courts have held that nearly identical anti-stacking provisions referring only to "Uninsured Motorists Coverage" clearly and unambiguously barred stacking of underinsured motorist limits. *See Lloyd*, 2010 U.S. Dist. LEXIS 73940, at *1; *Davis*, 2010 Va. Cir. LEXIS 105, at *2. It does not appear, however, that this precise argument was raised in those cases. Nonetheless, I conclude that the Policy clearly forbids the stacking of underinsured motorist coverage. Construing the Policy as a whole and the disputed term in its proper context, any reasonable person would understand the reference to "Uninsured Motorists Coverage" in the "Limit of Liability" section to include both uninsured and underinsured coverage.

The term "Uninsured Motorists Coverage" is used consistently in Part 3 of the Policy and in the declarations page to refer to both uninsured and underinsured coverage. Part 3 of the Policy, which is titled "Uninsured Motorists Coverage," covers both uninsured and underinsured

---

[1] Plaintiff also relies on *Hosp v. Erie Insurance Co.*, 23 Va. Cir. 490 (Va. Cir. Ct. 1991), in which the court found that a UM/UIM policy clearly and unambiguously prohibited stacking. The section of that policy addressing uninsured motorist coverage included a caption that "unmistakably sets up underinsured motorist coverage as a sub-category of uninsured motorist insurance coverage." *Id.* at 491. *Hosp* does not inform my decision, however, because that court did not have occasion to pass on the clarity of an anti-stacking provision in a policy lacking such a caption.

motorists. In the subheading of Part 3, the Policy states "Coverage D – Uninsured Motorists (Damages for Bodily Injury)" and "Coverage D – Uninsured Motorists (Damages for Property Damage)," yet Part 3 undoubtedly provides both uninsured and underinsured motorist coverage for bodily injury and property damage. The personal auto policy quick reference guide included with the Policy describes Part 3 as providing "Protection Against Uninsured Motorists," even though it also protects underinsured motorists. The declarations page, which provides the coverage, limits of liability, and premiums for the Policy, lists coverage for "Uninsured Motorists Bodily Injury" and for "Uninsured Motorists Property Damage." Although the declarations section does not separately list underinsured coverage, it is undisputed that the coverage, limits of liability, and premiums listed for uninsured motorists pertain to underinsured motorists as well. Thus, when the Policy limits liability and prohibits stacking for the limits shown in the declarations for each person and each accident for "Uninsured Motorists Coverage," it is clearly referring to the same body of coverage that the declarations encompass, *i.e.*, both uninsured and underinsured coverage.

The term "Uninsured Motorists Coverage" is used consistently throughout the Policy to refer to both uninsured and underinsured motorists—there is simply no conflict that could lead me to find ambiguity. It is true, as Plaintiff urges, that the Policy draws a distinction between an "uninsured motor vehicle" and an "underinsured motor vehicle." But uninsured and underinsured motor vehicles are both insured under the "Uninsured Motorists Coverage" part of the Policy. In addition, the anti-stacking language does not refer to an uninsured motor vehicle, it refers to the "Uninsured Motorists Coverage" shown in the declarations, which, as I stated before, covers both uninsured and underinsured motorists. It is not surprising that the term "Uninsured Motorists Coverage" is used to describe underinsured motorist coverage as well.

Virginia Code § 38.2-2206, which contains the governing law with respect to both uninsured motorists and underinsured motorists, is titled "Uninsured motorist insurance coverage," and states that the uninsured motorist endorsement "shall also obligate the insurer to make payment for bodily injury or property damage caused by the operation or use of an underinsured motor vehicle." VA. CODE ANN. § 38.2-2206(A) (2010); *see also Nationwide Mut. Ins. Co. v. Scott*, 234 Va. 573, 575-76, 363 S.E.2d 703, 704-05 (1988); *Kiernan v. Agency Rent A Car, Inc.*, 940 F.2d 917, 919 (4th Cir. 1991) ("[W]e reject . . . arguments that . . . the obligation runs only to providing uninsured, not underinsured, motorist coverage. This is at odds with controlling Virginia law, which in line with the general trend, treats the two as one.").

Next Plaintiff argues that the Policy does not clearly and unambiguously ban stacking of bodily injury coverage. In the "Limit of Liability" section of the Policy dealing with split limits, which is the relevant section here, the first paragraph limits liability for bodily injury, the second paragraph limits liability for property damage, and the third paragraph contains the anti-stacking language beginning with the phrase "[t]his is the most we will pay regardless of . . . ." According to Plaintiff, the placement of the anti-stacking language immediately following the paragraph on property damage indicates that the stacking prohibition only applies to property damage, or at minimum, creates confusion as to whether it forbids stacking with regard to property damage only, or with regard to both property damage and bodily injury. I disagree. When the phrase "[t]his is the most we will pay regardless of . . ." is read in the context of the entire "Limit of Liability" section, it is clear that the anti-stacking provision applies to both bodily injury and property damage liability. The section on split limits contains just the three aforementioned paragraphs, and the last paragraph contains the anti-stacking provision, which follows both the bodily injury and the property damage paragraphs and clearly is intended to

refer to both. My holding is consistent with other courts that have considered this precise issue. *See Lloyd*, 2010 U.S. Dist. LEXIS 73940, at *6; *Hostettler*, 2010 U.S. Dist. LEXIS 107989, at *12; *Collier*, No. CL10-86.

Finally, Plaintiff claims that the placement of the anti-stacking provision in the body of the Policy and the listing of the coverage limits in a separate declarations page causes confusion. To further add to that confusion, Plaintiff states that the declarations page uses the term "Uninsured Motorists" but does not use the term "underinsured" to describe the coverage.[2] In support, Plaintiff interprets *Williams* to have found it "significant" that the policy under review in *Williams* did not list the numerical limits of liability, but only contained a reference to a declarations page which included them. *See Williams*, 278 Va. at 82, 677 S.E.2d at 303.

It bears repeating that the source of the ambiguity in *Williams* was the existence of two different underinsured motorist coverage amounts, rendering unclear the extent of total coverage for "each person" under the policy. The *Williams* court did not base its holding on the fact that the coverage amounts were not directly listed in the policy. The "significant difference" described in *Williams* was the fact that the policy in *Borror* clearly stated the limits of liability for "each person," *id.* ("There, the UM endorsement contained a schedule stating the limits of liability for "each person" at $25,000."), whereas the policy in *Williams* referred the reader to a declarations page that was unclear as to the limits of liability for "each person." Here, the reference to the declarations page creates no ambiguity because the declarations page clearly states a single "each person" limit of liability. Other courts considering this argument have also rejected it. *See Lloyd*, 2010 U.S. Dist. LEXIS 73940, at *23-24; *Collier*, No. CL10-86; *Davis*,

---

[2] Plaintiff also argues that the following language in the declarations page creates ambiguity: "[i]nsurance is provided only where a premium is shown for the coverage." This contention has been rejected by another court in a well-reasoned opinion. *See Lloyd*, 2010 U.S. Dist. LEXIS 73940, at *20-21. Indeed, the policy involved in *Borror* contained the same language, but that policy was held to be clear and unambiguous. Plaintiff's argument is meritless.

2010 Va. Cir. LEXIS 105, at *6; *Joyce*, No. CL09-833; *Patterson*, No. CL09-2805; *Salzman*, No. CL09-1566.

### IV. CONCLUSION

For the reasons stated herein, this Court will grant Travelers' Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment. An appropriate order will follow.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

Entered this  17th  day of December, 2010.

                                                          NORMAN K. MOON
                                                          UNITED STATES DISTRICT JUDGE